IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 209-08974 |
| **TRI STAR ALUMINUM CO., L.P.,** ) | Judge Lundin |
| ) | Chapter 11 |
| **Debtor.** ) | |
| ) | |
| ) | |

THE DEADLINE FOR FILING A TIMELY RESPONSE IS: **October 21, 2009**
IF TIMELY RESPONSE IS FILED, THE HEARING WILL BE HELD: **9:00 a.m., on October 27, 2009, Courtroom 2, Second Floor, Customs House, 701 Broadway, Nashville, Tennessee 37203**

## OBJECTION TO DISCLOSURE STATEMENT COMBINED WITH PLAN OF REORGANIZATION FILED BY TRI STAR ALUMINUM CO., L.P.

Intrametco Corporation ("Intrametco"), by and through counsel, and pursuant to 11 U.S.C. § 1125 and Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure, files this Objection to the Disclosure Statement Combined with Plan of Reorganization of Tri Star Aluminum CO., L.P. (the "Objection"). As grounds for the Objection, Intrametco states as follows:

**I.     BACKGROUND**

Tri Star Aluminum Co., L.P. (the "Debtor") filed for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") on August 7, 2009 (the "Petition Date"). Subsequent to the Petition Date, the Debtor has remained in possession and control of its property and has continued to operate its business as a debtor-in-possession under §§ 1006-1107 of the Bankruptcy Code.

The Debtor is in the business of producing secondary aluminum. Prior to the Petition Date, the Debtor purchased certain products from Intrametco. In addition, Intrametco purchased

"tolling time" from the Debtor for certain products owned by Intrametco. Within twenty days before the Petition Date, the Debtor received $73,632.70 worth of goods from Intrametco for which Intrametco has not been paid (the "Administrative Claim"). All of the goods were sold to the Debtor in the ordinary course of the Debtor's business. Intrametco has requested that its Administrative Claim be allowed in full. [Docket Entry No. 57]. In addition to its administrative claim, Intrametco holds an unsecured claim for $312,367.30 (the "Unsecured Claim"). In total, Intrametco holds an unsecured claim against the Debtor in the amount of $386,000.00, with $73,632.40 entitled to priority as an administrative claim under 11 U.S.C. § 503(b)(9).

On September 18, 2009, the Debtor filed a Plan of Reorganization Combined with Disclosure Statement (the "Plan and Disclosure Statement"). Under the terms of the Plan and Disclosure Statement, Intrametco's Administrative Claim would be a Class 1 Claim. The Plan and Disclosure Statement provides for Class 1 Claims to be fully paid within 10 business days of the later of: (i) the entry and finality of an order of the Court allowing such Claim or (ii) the Effective Date of the Plan, or as otherwise deferred by agreement between the holder of the Claim and the Debtor. [Plan and Disclosure Statement, Article IV., ¶ 1]. Intrametco's Unsecured Claim would be a Class 7 Claim. The Plan and Disclosure Statement provides that Class 7 Claims will be paid $10,000.00 on a pro rata basis quarterly until the Debtor has paid the lesser of $200,000 or 10% to the holders of Class 7 Claims. [Plan and Disclosure Statement, Article IV., ¶ 7].

Intrametco objects to approval of the Plan and Disclosure Statement on various grounds, as discussed below. The Debtor has proposed a reorganization plan that fails to satisfy the provisions of 11 U.S.C. § 1129. The plan of reorganization is not feasible, is not fair and

2

N CHG 726560 v1
2914953-000001 10/21/2009

equitable, and the Plan and Disclosure Statement provides inadequate information to creditors such as Intrametco.

## II. ANALYSIS

### A. The Burden of Proof & Requirements of 11 U.S.C. § 1129

A plan proponent bears the burden of proving that its plan satisfies the requirements of the Bankruptcy Code. See *In re Byrd Foods, Inc.*, 253 B.R. 196, 199 (Bankr. E.D.Va. 2000) ("It is well established that it is the debtor's burden to show that the plan meets the statutory criteria"); see also, *In re Perez*, 30 F.3d 1209, 1214 n.5 (9th Cir. 1994). This burden falls "particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors." *Perez*, 30 F.3d at 1214 n.5. In order to confirm a plan of reorganization, the Debtor also must comply with the applicable provisions of the Code. 11 U.S.C. § 1129(a)(2). For example, the requirements set forth in 11 U.S.C. § 1129(a), with the exception of § 1129(a)(8) must be satisfied. *In re Sis Corp.,* 120 B.R. 93, 95 (Bankr.N.D.Ohio, 1990). The legislative history to § 1129(a)(2) suggests that Congress was primarily concerned with ensuring that the proponent of the plan provide "adequate information" to those entities voting on the plan, as required by § 1125. See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 412 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 126 (1978). Moreover, the plan of reorganization must be proposed in good faith. 11 U.S.C. § 1129(a)(3). A plan is not proposed in good faith if it has no realistic possibility and is designed to frustrate creditor's legitimate rights. *Id.* (citing *In re Coastal Cable T.V., Inc.*, 709 F.2d 762 (1st Cir. 1983).

### B. Adequacy of Information

The Plan and Disclosure Statement proposed requires significant revision to properly inform creditors of their rights under the Plan. "In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is

3

going to get it, and what contingencies there are to getting its distribution." *In re Ferretti,* 128 B.R. 16, 19 (Bankr. D. N.H. 1991). In the language of the Bankruptcy Code, a disclosure statement must contain "adequate information," under 11 U.S.C. §1125(b), specifically defined as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, . . . and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information; . . .

11 U.S.C. §1125(a)(1). The conclusory nature of the Plan and Disclosure Statement makes evaluation of the Plan impossible, and the Debtor should be required to amend the Plan and Disclosure Statement to conform to the Bankruptcy Code prior to sending it to creditors.

### C. **Patently Noncomfirmable**

Ordinarily, issues about confirmability of a plan are left for the hearing on confirmation. However, when a plan is fatally flawed, <u>i.e.</u> patently unconfirmable, then the court must disapprove the disclosure statement that supports it. *In re Silberkraus*, 253 B.R. 890, 899 (Bankr. C.D. Cal. 2000), *citing In re United States Brass Corp.*, 194 B.R. 420 (Bankr. E.D. Tex. 1996); *In re Spanish Lake Assoc.*, 92 B.R. 875, 877 (Bankr. E.D. Mo. 1988); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986); *In re Century Investment Fund VIII Ltd. Partnership*, 114 B.R. 1003 (Bankr. E.D. Wis. 1990). Using an unconfirmable plan to solicit votes is needless and misleading. *Pecht* at 139.

Requirements for confirmation are stated in § 1129(a) of the Bankruptcy Code. This Plan fails to meet the criteria imposed by § 1129. Specifically, the Plan appears to violate the

4

absolute priority rule. The absolute priority rule has been ingrained in bankruptcy practice since the Supreme Court's decision in *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197 (1988). After evolution over time, the rule has been restated as follows:

> [A] plan of reorganization may not allocate any property whatsoever to any junior class on account of their interests or claims in a debtor unless all senior classes consent, or unless such senior classes receive property equal in value to the full amount of their allowed claims or the debtor's reorganization value, whichever is less.

7 Collier on Bankruptcy, ¶ 1129.04[4][a] at 1129-93 (15th ed. rev.).

The Plan is not fair and equitable to Intrametco's general unsecured claim because the Debtor proposes to both (1) retain all of its pre-petition, non-exempt property for no additional consideration and (2) grant equity interests to four new owners for no additional consideration, while paying unsecured creditors ten cents on the dollar over a two- year period. There is no explanation in the Plan and Disclosure Statement as to how the 10% distribution to creditors was arrived at or why such amount is fair or reasonable in light of the Debtor's ongoing operations and potential to generate future income that could be used to pay additional amounts on the unsecured claims.

### D. The Debtor's Plan is Not Feasible-11 U.S.C. § 1129(a)(11)

#### 1. *Determinations of Feasibility Must Be Firmly Rooted in Predictions Based on Objective Fact.*

To meet the feasibility requirement of Section 1129(a)(11), the Debtor has the burden of proof to establish by a preponderance of the evidence that it has at least a reasonable prospect of success. *In re Danny Thomas Propeties II Ltd. Partnership*, 241 F.3d 959, 963 (8th Cir. 2001). "Section 1129(a)(11), commonly referred to as the feasibility requirement, allows a court to confirm a Chapter 11 case only if '[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the

debtor under the plan, unless such liquidation or reorganization is proposed in the plan.'" *In re Mallard Pond Ltd.*, 217 B.R. 782, 784-785 (Bankr.M.D.Tenn.1997). Further, while the determination of the feasibility of a proposed plan is necessarily fact-intensive, the plan need only present a "reasonable assurance of success" by sufficiently establishing "a realistic and workable framework for reorganization." *In re Brice Road Developments*, 392 B.R. 274, 283 (6th Cir. BAP 2008) (citations omitted). Relevant factors to a finding of feasibility are: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.),* 800 F.2d 581, 589 (6th Cir.1986) (citation omitted).

When weighed against the criteria set forth in *U.S. Truck,* the weaknesses in Debtor's plan are glaring:

> (a) *Adequacy of the capital structure*: the Debtor's monthly operating reports clearly illustrate that there has been and will continue to be insufficient capital to fund the Plan. The Plan assumes, prior to payments under the Plan, net income in the amount of $30,667.00, all of which is to be derived from the operations of the Debtor in similar economic conditions as existed on the Petition Date;
>
> (b) *Earning power of the business*: Debtor has not provided any financial projections regarding the prospective earning power the business beyond a 2 year terms nor has it provided any evidence of even moderate turnaround in the industry within which the Debtor struggled prior to the Petition Date;
>
> (c) *Economic conditions*: The dismal state of the economy, both nationally and locally, continues to be the front page news, with daily reports of businesses closing their doors. Current economic conditions, which are little better than the conditions that led to Debtor's bankruptcy petition (specifically identified in the Plan and Disclosure Statement on page 5), weigh heavily against a finding of feasibility and confirmation of the Plan;

(d) *Ability of management*: Debtor proposes no changes in the management of the Debtor from which all revenue necessary to fund the Plan must be derived. The same management of the same failed business in the same economic conditions is likely to yield the same result and a need for further restructuring;

(e) *Probability of the continuation of the same management*: Based on Debtor's Disclosure Statement and Plan, the probability of the continuation of the same management is 100%. Debtor offers no proposed changes in management; and

(f) *Other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan*: The Debtor's own projections, discussed below, show that there is little prospect of a sufficiently successful operation to enable performance of the provisions of the plan.

### 2. *Projections not Sufficient*

Exhibit C to the Plan and Disclosure Statement consists of pro-forma budgets for the reorganized Debtor for 2010 and 2011. Although the projections should assist creditors by providing adequate information about the Debtor's anticipated performance after reorganization, as well as its ability to perform under the terms proposed by the Plan, Exhibit C fails in this task. Without adequate financial projections, creditors are unable to properly assess the feasibility of the Plan.

The most significant issue with the projections provided by the Debtor is that during 8 of the 24 months the Debtor projects negative net income, and yet provides no information as to how it expects to satisfy its financial obligations during those months. The scant financial information provided combined with the issues raised by what little documentation has been attached to the Plan and Disclosure Statement demonstrates that the Plan is not feasible and thus not confirmable. The Debtor should also be required to disclose its cash needs as of the Effective Date and proposed payments to be made under the Plan should be broken down by each class of claims or interests. The projections do no indicate the quarterly payment to unsecured creditors. The Plan and Disclosure Statement contains inadequate information

7

concerning administrative expenses and the provisions for their payment under the Plan. Further, the Debtor's liquidation analysis is incomplete and conclusory. Creditors are entitled to decide whether they wish to support the high-risk reorganization proposed by this Debtor or whether to seek the liquidation of the Debtor's property and a more immediate resolution of their claims. It is impossible for creditors to make this necessary determination without a true liquidation analysis.

### III. CONCLUSION

For the reasons set for the above, Intrametco respectfully requests that the Court deny approval of the Plan Disclosure Statement and that Intrametco have such other and further relief as the Court deems just and proper.

Dated this 21st day of October, 2009.

Respectfully submitted,

/s/ *Courtney H. Gilmer*
Randal S. Mashburn
Courtney H. Gilmer
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
Baker Donelson Center
211 Commerce Street, Suite 1000
Nashville, Tennessee 37201
Tel: (615) 726-5747
Fax: (615) 744-5747
businessbknash@bakerdonelson.com

Counsel for Intrametco Corporation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon the following parties via U.S. mail, postage prepaid and on all other parties requesting notice via the CM/ECF system:

>Elliott W. Jones
>Drescher & Sharp, P.C.
>1720 West End Avenue, Suite 300
>Nashville, Tennessee 37203
>
>Beth Roberts Derrick
>Office of the United States Trustee
>701 Broadway, Room 318
>Customs House
>Nashville, Tennessee 37203-3966

this 21st day of October, 2009.

>/s/ *Courtney H. Gilmer*
>Courtney H. Gilmer

N CHG 726560 v1
2914953-000001 10/21/2009